MANGUM, Indiv. and as Manager of North Cinema, Inc.
*v.* MARYLAND STATE BOARD OF CENSORS

[No. 109, September Term, 1974.]

*Decided November 25, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ., and CHARLES E. ORTH, JR., Chief Judge of the Court of Special Appeals, specially assigned.

*William E. Seekford* for appellant.

*Norman Polovoy, Deputy Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Josef E. Rosenblatt, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

In this case, petitioner challenges a decision of the Circuit Court of Baltimore City (James W. Murphy, J.) which upheld the Maryland State Board of Censors' refusal to grant a license for exhibition of the film "Deep Throat."

On May 23, 1974, petitioner, on behalf of North Cinema, Inc., submitted the motion picture entitled "Deep Throat" to the Maryland State Board of Censors for review pursuant to Maryland Code (1970 Repl. Vol., 1974 Cum. Supp.), Art. 66A, § 17. The next day, the Board of Censors issued a rejection order and filed a petition for review in the Circuit Court of Baltimore City, as required by Art. 66A, § 19 (a). On May 30, 1974, petitioner filed a petition for continuance in the circuit court. On May 31, 1974, after a hearing, the court granted petitioner's motion for a continuance, but the court issued an interlocutory injunction temporarily restraining further

showing of the film "Deep Throat" in the State of Maryland until such time as the court had rendered a final judgment in the matter. The petitioner took an appeal from the interlocutory injunction on the same day, May 31, 1974. On July 31, 1974, the Court of Special Appeals, on respondent's motion, dismissed the appeal from the interlocutory injunction on the ground that it was moot. Subsequently, this Court denied a petition for a writ of certiorari to review the dismissal by the Court of Special Appeals.

While the appeal from the interlocutory injunction was pending, the trial judge viewed the movie at a closed showing at the court house and, again, at petitioner's request, at the theater of the petitioner. At a hearing before Judge Murphy, the film itself together with the rejection order and the minutes of the May 24 Censor Board meeting were introduced. The petitioner presented five "expert witnesses." All five of the expert witnesses testified that they did not believe that "Deep Throat" was patently offensive to community standards. All but one stated that the film did not appeal to the prurient interest of the average adult. Only Dr. Nachand, a psychologist, testified to artistic and scientific value, though two other witnesses made reference to the "parody" or "satire" involved in the film. All of the petitioner's experts had difficulty describing what to them would be pornographic. Only Paul Walker, a psychology instructor at the University of Baltimore, got beyond words such as "unhealthy," "morbid," "pathological." Mr. Walker stated that films which advocated "brutality," "exploitation," or "violence" would be pornographic.[1]

On June 24, 1974, while the appeal from the interlocutory injunction was still pending, Judge Murphy issued his opinion and order disapproving the film "Deep Throat" for licensing by the Board of Censors and affirming the May 24, 1974, finding of the Censor Board. Judge Murphy found the

---

[1]. Petitioner also submitted to the trial court a public opinion survey taken in Maryland concerning attitudes toward depiction of explicit sexual acts in movies and magazines. The survey made no reference to "Deep Throat" and therefore was of little relevance to the present issue. In any case, the survey results were inconclusive, contradictory and offered little support to petitioner's position.

film to be obscene under the definition set forth in *Miller v. California,* 413 U. S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419, *reh. denied,* 414 U. S. 881, 94 S. Ct. 26, 38 L.Ed.2d 128 (1973). On the same day, the petitioner filed a notice of appeal to the Court of Special Appeals. Because of the importance of the issues in this case, we granted a writ of certiorari prior to a decision by the Court of Special Appeals.

The petitioner advances three principal arguments for reversing the circuit court's decision. (1) The appeal from the issuance of the interlocutory injunction on May 31, 1974, deprived the circuit court of jurisdiction.[2] (2) The film "Deep Throat" is not obscene under the current Supreme Court definition of that term.. (3) Maryland courts may not, consistent with Art. 8 of the Maryland Declaration of Rights, construe the word "obscene" in the Maryland movie censorship law, Code Art. 66A, to be the same as the current Supreme Court definition of "obscene" for First Amendment purposes.

I.

While generally the filing of a notice of appeal in a case deprives the trial court of jurisdiction to proceed further in that case, there are exceptions to this rule. *Bullock v. Director of Patuxent Institution,* 231 Md. 629, 633, 190 A. 2d 789 (1963); *Cook v. Boehl,* 188 Md. 581, 592, 53 A. 2d 555 (1947); *Dietrich v. Anderson,* 185 Md. 103, 111, 43 A. 2d 186 (1945); *Barnum v. Barnum,* 42 Md. 251, 294 (1875); *Smiley v. Atkinson,* 12 Md. App. 543, 549-551, 280 A. 2d 277 (1971), *aff'd,* 265 Md. 129, 287 A. 2d 770 (1972); *Raimondi v. State,* 8 Md. App. 468, 475-476, 261 A. 2d 40 (1970). One well recognized exception is where the appeal is taken from an interlocutory or preliminary injunction. The authorities, with apparent unanimity, hold that while an appeal from an interlocutory injunction is being pursued, the trial court

---

**2.** Petitioner raised other issues concerning the May 31, 1974, interlocutory injunction which we need not, and do not, reach. They are pertinent only to the appeal from the interlocutory injunction, and were raised in that appeal. As previously mentioned, that appeal was dismissed as moot, and this Court denied certiorari on September 11, 1974.

may proceed with any other issue or matter in the case. *Ex parte National Enameling & Stamping Co.*, 201 U. S. 156, 162, 26 S. Ct. 404, 50 L. Ed. 707 (1906); *DePinto v. Provident Security Life Ins. Co.*, 374 F. 2d 50, 51, n. 2 (9th Cir. 1967); *Janousek v. Doyle*, 313 F. 2d 916, 920-921 (8th Cir. 1963); *Phelan v. Taitano*, 233 F. 2d 117, 119 (9th Cir. 1956); *Students Challenging Reg. Agcy. Proc. v. United States*, 353 F. Supp. 317, 320, n. 2 (D.D.C. 1973); *O'Brien v. Avco Corp.*, 309 F. Supp. 703, 705 (S.D. N.Y. 1969); *Doudell v. Shoo*, 159 Cal. 448, 114 P. 579, 582 (1911); *Nomm v. Nomm*, 164 Cal.App.2d 663, 330 P. 2d 839, 840 (1958); *Cloud v. Dyess*, 172 So. 2d 528, 531 (La. App. 1965); *Appeals of Sheaffer and Herkscher*, 100 Pa. 379, 382 (1882); *Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768, 773 (Tex.Civ.App. 1970); *Lynch v. Clinch Motor Co.*, 131 Va. 202, 108 S. E. 641, 642 (1921).

Moreover, in the present situation, it was even clearer that the trial court should have been able to exercise jurisdiction despite the pendency of the appeal from the interlocutory injunction. Where the prior restraint of a film exhibition is involved, the First Amendment requires that procedures to review the film be as expeditious as possible. *Freedman v. Maryland*, 380 U. S. 51, 85 S. Ct. 734, 13 L.Ed.2d 649 (1965). Article 66A, § 19, of the Maryland Code was amended in 1965 to conform to this requirement. *See Dunn v. Maryland State Board of Censors*, 240 Md. 249, 213 A. 2d 751 (1965); *Star v. Preller*, 352 F. Supp. 530 (D. Md. 1972), *remanded for reconsideration*, 413 U. S. 905, 93 S. Ct. 3054, 37 L.Ed.2d 1016 (1973), *on remand*, 375 F. Supp. 1093 (D. Md. 1974), *aff'd*, 419 U. S. 956, 95 S. Ct. 217, 42 L.Ed.2d 173 (1974). The State also has an interest in requiring that allegedly obscene films be reviewed quickly. If no decision on the action of the Censor Board could be made until an appeal from an interlocutory injunction were completed, the purpose of Article 66A in requiring expeditious reviewing of the film would be frustrated whenever either side appealed from any appealable interlocutory action taken by the circuit court before a finding of obscenity was made.

We therefore reject the petitioner's argument that the

appeal from the interlocutory injunction deprived the circuit court of jurisdiction during the pendency of the appeal.

## II.

Petitioner contends that the film "Deep Throat" is not obscene under the meaning of that term set forth by the Supreme Court in *Miller v. California, supra.* In this connection, a brief review of some of the Supreme Court cases would be useful.

The Supreme Court held in *Joseph Burstyn, Inc. v. Wilson,* 343 U. S. 495, 502, 72 S. Ct. 777, 96 L. Ed. 1098 (1952), that "expression by means of motion pictures is included within the free speech . . . guaranty of the First and Fourteenth Amendments." However, in *Roth v. United States,* 354 U. S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957), the Court held that "obscenity is not within the area of constitutionally protected speech or press." Four justices joined Mr. Justice Brennan in stating (354 U. S. at 484):

> "All ideas having even the slightest redeeming social importance — unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion — have the full protection of the [First Amendment] guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance."

The Court went on to adopt, as a definition of obscenity, the following (*id.* at 489):

> "Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

The Court in *Roth* made it clear that it was using the term "obscenity" to include a limited range of material dealing

with sexual matters. Mr. Justice Brennan said for the Court (*id.* at 487, n. 20):

> "We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10 (2) (Tent. Draft No. 6, 1957), *viz.*; '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . .' "

For nine years following *Roth*, the Supreme Court did not alter its definition of obscenity. Probably the most significant discussions of the definition were the various opinions in *Manual Enterprises, Inc. v. Day*, 370 U. S. 478, 82 S. Ct. 1432, 8 L.Ed.2d 639 (1962), and *Jacobellis v. Ohio*, 378 U. S. 184, 84 S. Ct. 1676, 12 L.Ed.2d 793 (1964). In *Manual Enterprises, Inc. v. Day, supra,* Mr. Justice Harlan, in announcing the judgment of the Court, took the position that where material was aimed at a particular deviant group, the test for obscenity was whether the material was patently offensive to community standards. In *Jacobellis v. Ohio, supra,* Mr. Justice Brennan argued for a national community standard in testing obscenity. Mr. Justice Stewart saw only "hard core pornography" as being constitutionally unprotected and, as to a definition of that, stated: "I know it when I see it, and the motion picture involved in this case is not that." (378 U. S. at 197.)

In *A Book Named "Memoirs" v. Attorney General of Mass.*, 383 U. S. 413, 86 S. Ct. 975, 16 L.Ed.2d 1 (1966), the Supreme Court again wrestled with the definition of obscenity for constitutional purposes. The plurality opinion of three justices built on the *Roth* definition, as elaborated in subsequent cases, to define obscenity as follows (383 U. S. at 418):

> " . . . [t]hree elements must coalesce: it must be established that (a) the dominant theme of the

material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The Supreme Court's view of the significance of the *Memoirs* definition was set forth in *Miller v. California, supra,* where Chief Justice Burger observed (413 U. S. at 21-22):

"While *Roth* presumed 'obscenity' to be 'utterly without redeeming social importance,' *Memoirs* required that to prove obscenity it must be affirmatively established that the material is '*utterly* without redeeming social value.' Thus, even as they repeated the words of *Roth,* the *Memoirs* plurality produced a drastically altered test that called on the prosecution to prove a negative, *i.e.,* that the material was '*utterly* without redeeming social value' — a burden virtually impossible to discharge under our criminal standards of proof."

Following the *Memoirs* case the Court, for a period of seven years, seemed to be unable to form a majority which agreed on a definition of what constituted obscene, pornographic material subject to governmental proscription. In *Redrup v. New York,* 386 U. S. 767, 87 S. Ct. 1414, 18 L.Ed.2d 515, *reh. denied,* 388 U. S. 924, 87 S. Ct. 2091, 18 L.Ed.2d 1377 (1967), and in many cases following it, the Supreme Court summarily reversed convictions for the dissemination of materials that at least five members of the Court, for whatever reasons, found to be constitutionally protected. *See Miller v. California, supra,* 413 U. S. at 22.

Recently in *Miller v. California, supra,* and four other cases decided on the same day,[3] five members of the

---

3. The other cases are: Paris Adult Theatre I v. Slaton, 413 U. S. 49, 93 S. Ct. 2628, 37 L.Ed.2d 446, *reh. denied,* 414 U. S. 881, 94 S. Ct. 27, 38 L.Ed.2d 128 (1973); United States v. 12 200-Ft. Reels of Super 8MM. Film, 413 U. S. 123, 93 S. Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U. S.

Supreme Court seemed to reach agreement on a definition of obscenity for First Amendment purposes. *Miller* involved a conviction under then section 311.2(a) of the California Penal Code for knowingly distributing obscene matter. The Court formulated a constitutional definition of obscenity in the following language (413 U. S. at 24-25):

> "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* [408 U. S.] at 230, quoting *Roth v. United States, supra,* [354 U. S.] at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of *Memoirs v. Massachusetts,* 383 U. S., at 419 . . . ."

The Court further explained this standard (*id.* at 25):

> "It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra*:
>
> "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
>
> "(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The Supreme Court made clear that the *Miller* definition reached only "hard core" pornography. Chief Justice Burger stated in *Miller* (*id.* at 27):

---

139, 93 S. Ct. 2674, 37 L.Ed.2d 513 (1973); Kaplan v. California, 413 U. S. 115, 93 S. Ct. 2680, 37 L.Ed.2d 492, *reh. denied,* 414 U. S. 883, 94 S. Ct. 28, 38 L.Ed.2d 131 (1973).

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed."

*See also Jenkins v. Georgia,* 418 U. S. 153, 94 S. Ct. 2750, 41 L.Ed.2d 642 (1974); *Hamling v. United States,* 418 U. S. 87, 94 S. Ct. 2887, 41 L.Ed.2d 590 (1974), for recent applications of the *Miller* test.[4]

In sum, under the *Miller* definition a film depicting sexual matters would be obscene or hard-core pornography, and thus beyond the protection of the First Amendment, if it meets the following test:

(a) the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; and

(b) the work depicts or describes, in a patently offensive way, sexual conduct specifically defined as,

    (1) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, or

    (2) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals; and

(c) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

---

**4.** For thorough discussions of the Supreme Court cases in this area from *Roth* to the present, and the obscenity definition set forth in *Miller* and its companion cases, see the opinions of Chief Judge Orth for the Court of Special Appeals in Ebert v. Md. St. Bd. of Censors, 19 Md. App. 300, 313 A. 2d 536 (1973), and Village Books, Inc. v. State, 22 Md. App. 274, 323 A. 2d 698 (1974).

*See Ebert v. Md. St. Bd. of Censors, supra,* 19 Md. App. at 314-315.

In the instant case, the trial judge as trier of the facts viewed the film "Deep Throat" and found that it was obscene under the *Miller* test. The court found that it was hard-core pornography and "was nothing more òr less than a so-called 'stag' film . . . ." On the basis of our viewing the film, it is clear that this is an accurate categorization.[5]

The film "Deep Throat" is for the most part a series of explicit depictions of sexual acts, including cunnilingus, fellatio, masturbation, normal and anal intercourse, and group sex. Effort was obviously made by the film makers to concentrate on the actors' genitals during the scenes of sexual activity. Well over half of the length of the film was devoted to displaying these explicit sexual acts. The satirical scenes referred to by some of petitioner's witnesses were brief and sophomoric, serving as little more than introductions to the scenes of explicit sexual activity.[6]

This case is the first case in which the question of hard-core pornography has been considered by this Court since the *Miller* definition was formulated by the Supreme Court. The film is clearly within the *Miller* definition of obscenity or hard-core pornography. In fact, "Deep Throat" would probably be deemed obscene under any meaningful definition of that term, including that set forth by the plurality opinion in *Memoirs*. It is noteworthy that in other jurisdictions where the matter has arisen, "Deep Throat" has consistently been found to be obscene. *See United States v. One Reel of Film,* 481 F. 2d 206 (1st Cir. 1973); *Coleman v.*

---

5. Petitioner argued that the trial court was bound by the testimony of his "expert" witnesses. However, the Supreme Court has made clear that the trier of facts on the issue of obscenity is not bound by expert testimony, and indeed, no expert evidence need be presented to prove obscenity where the questionable material is itself presented to the court. Paris Adult Theatre I v. Slaton, *supra,* 413 U. S. at 56. If the "expert" evidence presented in this case has any value at all, it would be as material for the General Assembly to consider if it were to reexamine Article 66A of the Maryland Code.

6. A most apt and detailed description of "Deep Throat" is found in People v. Mature Enterprises, Inc., 343 N.Y.S.2d 911, 912-913, 73 Misc. 2d 749, *supplemented,* 343 N.Y.S.2d 934, 73 Misc. 2d 773 (1973), *aff'd,* A.D.2d, 76 Misc. 2d 660, 352 N.Y.S.2d 346 (1974).

*Wilson*, 123 N.J.Super. 310, 302 A. 2d 555 (1973); *People v. Mature Enterprises, Inc., supra; S.S.W. Corporation v. Slaton*, 231 Ga. 734, 204 S.E.2d 155 (1974).

### III.

Petitioner next argues that Article 8 of the Maryland Declaration of Rights prohibits us from construing the term "obscene" in the movie censorship law as having the same meaning as the *Miller* definition of constitutionally unprotected obscenity. His view is that, by so construing the statutory term, this Court would be performing a legislative function in violation of the separation of powers principle contained in the Delaration of Rights.[7]

In the *Miller* case, the Supreme Court held that, with respect to state statutes regulating obscene material, "we now confine the permissible scope of such regulation to works which depict or describe sexual conduct." (413 U. S. at 24.) The Court went on to say that such "conduct must be specifically defined by the applicable state law, as written *or authoritatively construed.*" (*Ibid.*, emphasis supplied.) The majority opinion of the Supreme Court, apparently recognizing the burden upon the states if obscenity statutes had to be rewritten with every shifting majority of the Court in this area, stated (*ibid.*, n. 6, emphasis supplied):

"We do not hold, as Mr. Justice Brennan intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, *as construed* heretofore or hereafter, may well be adequate."

Thus, the Supreme Court seemed to contemplate judicial construction of the term "obscene" in state statutes to reflect the *Miller* definition. Nevertheless, petitioner argues that this may not be done in Maryland because of the

---

7. Article 8 of the Declaration of Rights of Maryland states:

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

separation of powers provision in the Maryland Declaration of Rights. Neither authority nor reason supports petitioner's contention.

The Maryland movie censorship law has never expressly contained a definition of the term "obscene" which has reflected any of the definitions used by the Supreme Court from the *Roth* case onward. When the law was first enacted in 1916, the Maryland State Board of Censors was directed to disapprove such films "as are sacrilegious, obscene, indecent, or immoral, or such as tend, in the judgment of the Board, to debase or corrupt morals." The word "obscene" itself was not defined. Ch. 209 of the Acts of 1916, § 6. There were revisions of the movie censorship law in 1918, 1920 and 1922, when films which "incite to crimes" and which are "inhuman" were added to the proscribed list, but no definition of the word "obscene" was enacted.[8]

The movie censorship law was next revised in 1955, Ch. 201 of the Acts of 1955, when the General Assembly, *inter alia,* deleted the words "sacrilegious," "indecent," "inhuman" and "immoral" from the list of prohibited films. The section listing the films which the Board was directed to disapprove thus read as follows:

> "6(a) *Board to examine, approve or disapprove films.* — The Board shall examine or supervise the examination of all films or views to be exhibited or used in the State of Maryland and shall approve and license such film or views which are moral and proper, and shall disapprove such as are obscene or such as tend, in the judgment of the Board, to debase or corrupt morals or incite to crimes. All films exclusively portraying current events or pictorial news of the day, commonly called news reels, may be exhibited without examination and no license or fees shall be required therefor."

In the 1955 revision the Legislature for the first time

---

8. Ch. 309 of the Acts of 1918; Ch. 651 of the Acts of 1920; Ch. 390 of the Acts of 1922, § 6.

enacted a definition of "obscene" in a new subsection (b) of § 6 as follows:

> "6(b) For the purposes of this Article, a motion picture film or view shall be considered to be obscene if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability of this effect is so great as to outweigh whatever other merits the film may possess."

Definitions of the terms "tend to debase or corrupt morals" and "tend to incite to crime" were enacted in subsections (c) and (d) of § 6. Subsequent amendments to the movie censorship law have not dealt with § 6 which has remained unchanged since 1955.

Ten years after the 1955 revision of the movie censorship law, this Court in *Dunn v. Md. Bd. of Censors*, 240 Md. 249, 213 A. 2d 751 (1965), in effect held unconstitutional the direction to the Board of Censors in § 6 (a) of the Act that they disapprove films which tend "to debase or corrupt morals." The Court also held unconstitutional the definition of "obscene" in § 6 (b) and the definition of films tending "to debase or corrupt morals" in § 6 (c). Finally, the Court held that the definition of "obscenity" to be applied under the statute was that formulated by the Supreme Court as a constitutional standard. Thus, Judge Hammond said for the Court in *Dunn* (240 Md. at 254):

> "We hold that the right and power of the Board to ban films as 'obscene' or as tending 'to debase or corrupt morals' under Sec. 6 of Art. 66A extends only to motion pictures which are obscene under the *Roth* test referred to and paraphrased in *Trans-Lux* and in this opinion. The cases of *Kingsley Int'l Pictures Corp. v. Regents of Univ. of N.Y.*, 360 U. S. 684, 3 L.Ed.2d 1512, and *Roth* and *Jacobellis*, following *Winters v. New York*, 333 U. S. 507, 92 L. Ed. 840, and *Joseph Burstyn, Inc. v. Wilson*, 343 U. S. 495, 96 L. Ed. 1098, make it manifest that only material which is obscene under

the *Roth* test can be censored or suppressed by a state, and that a state may not effectively substitute its definition of what is obscene for the *Roth* definition." [9]

Whatever may have been left open in the *Dunn* case concerning the standards of the movie censorship law was resolved in *Sanza v. Md. Board of Censors*, 245 Md. 319, 226 A. 2d 317 (1967). In *Sanza*, this Court held that the "incite to crime" standard of the statute was "so vague that it is unconstitutional," and that the "only valid standard for disapproval of a film under the Act . . . is obscenity." (245 Md. at 338.) The Court in *Sanza* went on to reiterate the prior holding in *Dunn* that "obscene" in the statute "is limited to what can be deemed obscene in the constitutional sense." (*Ibid.*) Finally, the Court in *Sanza* held that the invalidity of the statutory standards other than "obscenity," and the invalidity of the statutory definition of "obscenity," did not render the entire Act invalid. In holding that the provisions of the movie censorship law were severable, this Court specifically found that the General Assembly intended to authorize the Censor Board to disapprove of films deemed "obscene" by the constitutionally prescribed definition of that term. Judge Oppenheimer stated for the Court in *Sanza* (*id.* at 339, emphasis supplied):

"While some of the criteria which follow are impermissibly vague, *the legislative intent to authorize the Board to disapprove films which are obscene by any valid test seems clear*. In the recent cases before us, the Board has demonstrated that, in practice, the 'obscene' standards of Section 6 can

---

9. Earlier, in Monfred v. State, 226 Md. 312, 173 A. 2d 173 (1961), *cert. denied*, 368 U. S. 953, 82 S. Ct. 395, 7 L.Ed.2d 386 (1962), the *Roth* definition of obscenity was applied by this Court in a case arising under Maryland's criminal obscenity statute, now Code (1971 Repl. Vol.), Art. 27, § 418. *Monfred* was in turn relied upon in Fanfare Films v. Censor Board, 234 Md. 10, 197 A. 2d 839 (1964), a case arising under the movie censorship law. The *Roth* standard was again applied to a censorship case in Trans-Lux v. Md. Censor Board, 240 Md. 98, 213 A. 2d 235 (1965). It was not until the *Dunn* case, however, that this Court expressly declared unconstitutional the definition of obscenity contained in the Maryland movie censorship law, Code (1970 Repl. Vol.), Art. 66A, § 6 (b).

be treated as severable by limiting its findings of obscenity in accordance with the *Roth-Alberts* criteria, as the Board understands them. We hold that, faced with the eventuality that all of the standards for disapproving a film would be declared invalid other than obscenity in the constitutional sense, the Legislature nevertheless would have passed the Act."

In the other movie censorship cases following *Dunn,* this Court has consistently applied the definition of "obscenity" set forth in the most recent Supreme Court cases. *See Hewitt v. Maryland State Bd. of Censors,* 256 Md. 358, 260 A. 2d 319 (1970); *Wagonheim v. Maryland State Bd. of Censors,* 255 Md. 297, 258 A. 2d 240 (1969), *aff'd,* 401 U. S. 480, 91 S. Ct. 966, 28 L.Ed.2d 205 (1971); *Hewitt v. Maryland State Bd. of Censors,* 254 Md. 179, 254 A. 2d 203 (1969); *Hewitt v. Bd. of Censors,* 243 Md. 574, 221 A. 2d 894 (1966); *Leighton v. Maryland State Bd. of Censors,* 242 Md. 705, 218 A. 2d 179 (1966).[10]

---

10. It is noteworthy that the approach of our prior cases, namely to construe our obscenity statutes to reflect the definition of "obscenity" delineated in the most recent Supreme Court cases, has also been the approach taken by a majority of cases from other states since the Supreme Court's *Miller* decision. *See* Pierce v. State, 296 So. 2d 218, 222 (Ala. 1974); Gibbs v. State, 255 Ark. 997, 504 S.W.2d 719, 725-726 (1974); People v. Enskat, 33 Cal.App.3d 900, 109 Cal. Rptr. 433, 437-438 (1973); Rhodes v. State, 283 So. 2d 351, 356 (Fla. 1973); Slaton v. Paris Adult Theatre I, 231 Ga. 312, 201 S.E.2d 456, 459-460 (1973); Hall v. Commonwealth, 505 S.W.2d 166, 168 (Ky. 1974); State v. Welke, 216 N.W.2d 641, 648-649 (Minn. 1974) (prospective application only); State ex rel. Wampler v. Bird, 499 S.W.2d 780, 784 (Mo. 1973); State v. Little Art Corporation, 191 Neb. 448, 215 N.W.2d 853, 856 (1974); State v. Harding, 320 A. 2d 646, 649, 652 (N.H. 1974) (prospective application only); State v. DeSantis, 65 N. J. 462, 323 A. 2d 489, 495 (1974) (prospective application only); People v. Heller, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805, 814 (1973); State v. Bryant, 285 N. C. 27, 203 S.E.2d 27, 35-36 (1974); State ex rel. Keating v. "Vixen", 35 Ohio St. 2d 215, 301 N.E.2d 880, 882 (1973); State v. Watkins, 203 S.E.2d 429, 432 (S.C. 1973); Price v. Commonwealth, 214 Va. 490, 201 S.E.2d 798, 800-801 (1974); State v. J-R Distributors, Inc., 82 Wash. 2d 584, 512 P. 2d 1049, 1060 (1973). In a minority of cases, obscenity statutes have been invalidated where the courts held that *Miller* could not be applied to statutes which did not specifically define the prohibited hard-core conduct. Stroud v. State, 300 N.E.2d 100, 101 (Ind. 1973); State v. Wedelstedt, 213 N.W.2d 652, 656 (Iowa 1973); State v. Shreveport News Agency, Inc., 287 So. 2d 464, 469-470 (La. 1973); Commonwealth v. Horton, 310 N.E.2d 316, 321 (Mass. 1974); Art Theatre Guild, Inc. v. State ex rel. Rhodes, 510 S.W.2d 258, 260-261 (Tenn. 1974).

Consequently, it has been settled by this Court's decisions that the only basis for censorship of motion pictures under Art. 66A is "obscenity," and that the Legislature intended to ban only those films which are "obscene" under the definition of that term set forth by the Supreme Court as a constitutional standard. While the specific issue does not appear to have arisen until now, our prior decisions are totally inconsistent with petitioner's argument that the separation of powers principle is violated by construing "obscene" in the movie censorship law to be the same as the constitutional definition of that term.

Moreover, our prior construction of the movie censorship law, that the term "obscene" encompasses such sexual matter in films which may be constitutionally proscribed, does not amount to "judicial legislation" in violation of the separation of powers article of the Declaration of Rights. Construing statutes in connection with applying statutory provisions to specific cases, is a large and essential part of the judicial process. It is one of the principal functions which courts were created to perform in our governmental scheme. What was said by Judge Oppenheimer for the Court in *Deems v. Western Maryland Ry.*, 247 Md. 95, 101-102, 231 A. 2d 514 (1967), in rejecting an argument that a particular holding on a common law point amounted to judicial legislation in violation of the separation of powers principle, is analogous here:

> "The . . . argument ignores a basic function of the judicial process. The consideration of the distinctions between one group of facts and another in deciding the application of legal rules, the classification of relationships in the light of principles of justice, history and the social welfare, the determination of rights and liabilities according to status and general circumstance — these are of the warp and woof of our judicial system. See Holmes, *The Common Law* 117, and Cardozo, J. in *Jacob & Youngs, Inc. v. Kent*, 230 N. Y. 239, 242-43, 129 N. E. 889, 891 (1921). It is judge-made law which decides the varying legal liability of an

owner of land to persons upon his property according to whether they be invitees, licensees or trespassers, and the age below which infants cannot be charged with contributory negligence. These, and many other classifications, are made as a necessary part of the judicial function. The making of such determinations violates no principle of the separation of powers, for traditionally and as an inherent part of our system of government their formulation is a necessary part of the judicial duty."

Ascertaining and then applying the legislative will, like the development of common law principles, is also part "of the warp and woof of our judicial system."

Furthermore, the construction which our prior cases have given to the term "obscene" in the statute is fully supported by the language and legislative history. For almost forty years, the General Assembly did not explicitly define the word but chose for the courts to define its precise meaning on a case by case basis. When the General Assembly did supply a definition of the word "obscene" in 1955, that definition was certainly broad enough to embrace all hard-core pornography or sexual matter which is obscene in the constitutional sense. After this Court in *Dunn v. Board of Censors, supra,* held the statutory definition of "obscene" unconstitutional, the General Assembly did not deem it appropriate to re-define the term. In the nine years since the *Dunn* decision, the movie censorship law has been amended on several occasions,[11] but the Legislature has chosen not to change the definition set forth in the *Dunn* case. This certainly indicates that the definition of obscenity applied by this Court over the past nine years represents the legislative will rather than a usurpation of legislative authority.

---

11. Ch. 233 of the Acts of 1969; Ch. 99 of the Acts of 1970, § 7; Ch. 402 of the Acts of 1970, § 13; Ch. 181 of the Acts of 1972, § 58; Ch. 99 of the Acts of 1973.

## IV.

In oral argument before us, petitioner insisted that the film "Deep Throat," if its audience were restricted to consenting adults, would do no harm and should be permitted to be shown. Some of us, because of our views of the First Amendment's scope or of the wisdom of censorship, may agree with petitioner, and some of us may not. However, we are not the appropriate forum for this particular contention. It is our duty to apply the policy determinations of the Legislature to the extent that those determinations may be applied consistent with the First Amendment. The Supreme Court, of course, is the final arbiter of First Amendment requirements. The General Assembly of Maryland has made the policy determination that pornography like "Deep Throat" should not be licensed for viewing, even viewing limited to consenting adults, and the Supreme Court has held that such a determination is constitutionally valid. If petitioner is aggrieved by the policy determination, his remedy is a legislative one. If he disagrees with the Supreme Court's view of the First Amendment's scope in this area, the appropriate forum is that Court. Our role is to determine whether the film is "obscene" within the meaning of the Maryland Code and the Supreme Court's decisions, and we conclude that it is.

*Order affirmed.*
*Petitioner to pay costs.*