6 A.3d 890

**Ahmed M. ALI**

v.

**CIT TECHNOLOGY FINANCING SERVICES, INC.**

**No. 7, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 21, 2010.

---

250

Richard I. Chaifetz, Columbia, MD, for petitioner.

Harold G. Belkowitz (Ober, Kaler, Grimes & Shriver, Washington, D.C.), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

We are asked here to construe and apply Maryland Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 5–202,[1] which provides for, upon a debtor filing a "petition in insolvency," a tolling of the pertinent statute of limitations on the bringing of claims against the debtor for a period of time between "the filing and the dismissal" of such a petition. *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 109 Md.App. 217, 252, 674 A.2d 106, 123 (1996) ("[T]he statute of limitations is . . . 'suspended' by statutes, such as the ones tolling the period for . . . insolvency, *see* C.J. § 5–202. . . ."). Dr. Ahmed M. Ali—a defaulting lessee of medical equipment from an entity related to CIT Technology Financing Services, Inc. ("CIT")—appeals from a judgment of the Court of Special Appeals, affirming the judgment of the Circuit Court for Prince George's County, which determined that Ali owed CIT $212,703.80, inclusive of prejudgment interest. Both the Circuit Court and the intermediate appellate court (in Ali's subsequent appeal) held that, despite CIT's failure to file its claim within the generally applicable three-year statute of limitations, as prescribed in Md.Code (1974,

---

1. Unless otherwise provided, all statutory references are to Maryland Code, Courts and Judicial Proceedings Article (1974, 2006 Repl.Vol.).

2006 Repl.Vol.), Courts & Judicial Proceedings Art., § 5–101,[2] the filing was timely nevertheless, as Ali's filing of a Chapter 11 petition in bankruptcy in the United States Bankruptcy Court for the District of Maryland constituted a "petition in insolvency" within the meaning of § 5–202, which tolled the statute of limitations for a period of time sufficient to bring the filing within § 5–101's three-year limit.

Ali claims here, as he did in each court in this litigation, essentially that a federal bankruptcy petition is not a "petition in insolvency," considering that the Maryland Legislature did not designate these terms expressly as synonymous, even as it recodified repeatedly the tolling provision over a period of time during which federal bankruptcy proceedings were proliferating nationally and in Maryland. As such, Dr. Ali claims that § 5–202 did not operate to toll the three-year limit, and thus CIT's claim was barred by the statute of limitations. In response, CIT argues that the Legislature's frequent recodifications of § 5–202 during the 19th and 20th centuries—a time period during which bankruptcy and insolvency proceedings, for the most part, were shifting from the state to the federal arena—evinces a clear legislative intent to include the filing of a federal bankruptcy petition within the meaning of "petition in insolvency," as used in § 5–202. We hold, as explained more fully *infra*, that the plain meaning of § 5–202, confirmed by its legislative history and legislative purpose, supports the conclusion of the Circuit Court and the Court of Special Appeals that a federal bankruptcy petition constitutes a "petition in insolvency," as contemplated by § 5–202. Accordingly, we affirm the judgment of the Court of Special Appeals.

2. Before the intermediate appellate court, Respondent argued in the alternative that its claim was not barred under the twelve-year statute of limitations for specialties found in Md.Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Art. § 5–102. The intermediate appellate court, however, refused to entertain this argument, considering it was not made before the Circuit Court. CIT, having filed no cross-petition for certiorari regarding our colleagues' declination to reach this contention, and considering our disposition of Ali's appeal, there is no need for us to consider whether the statute of limitations on a specialty would be applicable to the facts in this case.

## FACTS AND LEGAL PROCEEDINGS

In a 17 June 1997 lease, CIT's predecessor leased medical equipment to Dr. Ali (Petitioner or "Dr. Ali") for a period of sixty months, payable in monthly payments of $3,097.49. Included in the lease was an acceleration clause, providing that, upon Petitioner's default, CIT could declare all rental payments immediately due and could recover interest and attorneys' fees in pursuit of the accelerated debt. Roughly midway through the lease period, Petitioner's medical practice suffered after he broke his hand in a car accident. Petitioner made payments under the lease, however, until April 1999, after which time no further payments were made to CIT. CIT declared Petitioner in default and demanded payment of $158,760.86, the accelerated balance due, on 10 August 2000.

On 11 June 2001, Dr. Ali filed a Chapter 11 petition in bankruptcy in the United States Bankruptcy Court for the District of Maryland. At that time, pursuant to 11 U.S.C. § 362, an automatic stay of pursuit of CIT's claim went into effect, meaning that CIT was barred from filing suit against Petitioner for breach of contract. At some point prior to September 2003, CIT filed a motion to be relieved of 11 U.S.C. § 362's automatic stay, which the bankruptcy court granted on 4 September 2003. Petitioner's bankruptcy case continued otherwise. On 21 June 2006, allegedly because Petitioner did not comply with bankruptcy procedures in completing an acceptable plan of reorganization, the bankruptcy court dismissed Petitioner's bankruptcy case pursuant to 11 U.S.C. § 1112(b).[3]

Approximately six months after the bankruptcy case was dismissed, on 18 January 2007, CIT filed suit in the Circuit

---

3. 11 U.S.C. § 1112(b)(1) provides, in pertinent part, that, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter ... to a case under Chapter 7 ... or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause."

Court for Prince George's County to enforce its rights under the lease, and sought attorneys' fees, prejudgment interest, post-judgment interest, and costs. Before the Circuit Court, Respondent presented testimony that Petitioner breached the lease and established the amount of damages recoverable. Petitioner did not deny that he breached the lease; rather, he contended (and contends today) that CIT's suit was barred by § 5–101's three-year statute of limitations.[4] On 27 May 2008, the Circuit Court entered judgment in favor of CIT for $190,725.85 in damages and $21,977.95 in prejudgment interest. In rejecting Dr. Ali's claim that CIT's suit was time-barred, the Circuit Court stated:

> Defendant argued that Plaintiff's Complaint and Amended Complaint are barred by a three-year statute of limitations. MD Code Ann., Courts & Jud. Proc. § 5–101. Given the tolling of the statute of limitations by the bankruptcy filing, the Complaint was timely filed. (*See* MD Code Ann., Courts & Jud. Proc. § 5–202, 11 U.S.C. 108(c)(1)).

Dr. Ali appealed timely to the Court of Special Appeals. The Court of Special Appeals, in a reported opinion, *Ali v. CIT Tech. Fin. Servs., Inc.,* 188 Md.App. 269, 981 A.2d 759 (2009), undertook a lengthy and impressive survey of the history of state insolvency laws and federal bankruptcy law. *See Ali,* 188 Md.App. at 277–85, 981 A.2d at 764–68. In affirming the judgment of the Circuit Court, the Court of Special Appeals explained:

> State laws that interact with federal bankruptcy law define the term insolvency and its variants for state law purposes. Those definitions include, either explicitly or implicitly, insolvency for purposes of bankruptcy under federal bankruptcy law. For example, [the Commercial Law Article] defines "insolvency proceedings" as "any assignment for the benefit of creditors or other proceedings intended to liqui-

---

**4.** Petitioner concedes that the period of limitations was tolled during 11 U.S.C. § 362's automatic stay, but argues that the three-year limit resumed running in September 2003, as of the bankruptcy court's grant of CIT's motion to lift the stay.

date or rehabilitate the estate of the person involved." Bankruptcy certainly is a proceeding intended to liquidate or rehabilitate the debtor's estate. Additionally, [the Commercial Law Article] defines "insolvent" as "[a] person ... who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law." Title 15 of the Commercial Law Article addresses aspects of debt collection. Section 15–101, which addresses preferences in proceedings involving an assignment for the benefit of creditors or receiverships, uses bankruptcy terms, including insolvency and void and voidable preferences, all as defined in the bankruptcy code.

If the General Assembly had intended there be no tolling provision, it would have repealed the statute. Instead, unlike almost all of Art. 47, CJP § 5–202 and its predecessors, it survived many legislative sessions and many code revisions, including code revisions in 1939, 1951, 1957, and the more recent codification of CJP. By reenacting the statute and not changing its substance on multiple occasions, we can presume that the General Assembly intended that it remain in effect. Federal bankruptcy law has expanded to include not only traditional bankruptcy but also traditional insolvency proceedings. Moreover, and very relevant to our analysis, is that the policy behind CJP § 5–202 appears to be applicable to bankruptcies. We conclude that the General Assembly, by retaining and reenacting the statute in question, even though it repealed the State insolvency laws, intended CJP § 5–202 to include bankruptcy proceedings. If the General Assembly did not so intend, it can amend or repeal the statute.

*Ali*, 188 Md.App. at 285–87, 981 A.2d at 768–69. (internal citations and footnotes omitted).

Dr. Ali filed timely a Petition for a Writ of Certiorari, which we granted, *Ali v. CIT Tech.*, 412 Md. 255, 987 A.2d 16 (2010), to consider "whether the lower court erred when it upheld the trial court's decision which held that the statute of limitations

on respondent's claim had not expired at the time the instant complaint was filed."

## DISCUSSION

### I. Standard of Review

■ There is no material factual dispute in this case. The arguments before this Court center on the trial court's legal conclusion that Petitioner's filing of a bankruptcy petition fell under the ambit of § 5–202, thus tolling the statute of limitations. It is well settled that "where an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a [non-deferential] standard of review." *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175, 184 (2006); *see Wash. Suburban Sanitary Comm'n v. Phillips,* 413 Md. 606, 618, 994 A.2d 411, 418 (2010); *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002).

### II. Analysis

■ In Maryland, the general rule is that "[a] civil action at law shall be filed within three years from the date it accrues...." Maryland Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 5–101. This statute of limitations "reflects a legislative judgment of what is deemed an adequate period of time in which 'a person of ordinary diligence' should bring his action." *Philip Morris USA, Inc. v. Christensen,* 394 Md. 227, 240, 905 A.2d 340, 348 (2006) (quoting *Walko Corp. v. Burger Chef Sys., Inc.,* 281 Md. 207, 215, 378 A.2d 1100, 1104 (1977)); *see Doughty v. Prettyman,* 219 Md. 83, 92–93, 148 A.2d 438, 443 (1959) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944)) ("[T]he primary consideration underlying statutes of limitations is one of fairness to the defendant; that he ought not to be called on to resist a claim when 'evidence has been lost, memories have faded, and witnesses have disappeared.'"); *McMahan v. Dor-*

*chester Fertilizer Co.,* 184 Md. 155, 159–60, 40 A.2d 313, 315 (1944) ("Statutes of limitations ... rest upon sound public policy, for they are enacted to afford protection against stale claims after a lapse of time which ought to be sufficient for a person of ordinary diligence, and after which the defendant might be placed at a disadvantage by reason of long delay."). Realizing, however, that a "one-size-fits-all" approach does not always serve to further the policies underlying the three-year limit, the Legislature enacted numerous exceptions to § 5–101's three-year statute of limitations. *See, e.g.,* §§ 5–102 (specialties); 5–105 (assault, libel, or slander); 5–116 (breast implants). Further, the Legislature, aware that certain predicaments may arise before or during the pendency of the three-year limitations period that could prevent a plaintiff from filing his or her claim, enacted various tolling provisions that operate to "interrupt[ ] the running of a statute of limitations in certain situations...." *Turner v. Kight,* 406 Md. 167, 181, 957 A.2d 984, 992 (2008) (quoting BLACK'S LAW DICTIONARY 1525 (8th ed.2004)); *see Mason v. Bd. of Educ. of Baltimore County,* 375 Md. 504, 521, 826 A.2d 433, 443 (2003) (Eldridge, J., dissenting) ("[U]nlike a statute of limitations which principally benefits the defendant by delimiting a definite period of time, a tolling statute is enacted solely for the benefit of the plaintiff."). One such tolling provision, § 5–202, is at issue in the present case. Before analyzing § 5–202, however, a brief consideration of the tolling provision's connection with federal bankruptcy law is appropriate.

Pursuant to 11 U.S.C. § 362,

a [bankruptcy] petition ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation ..., of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case[,] ... or to recover a claim against the debtor that arose before the commencement of the case....

With no protective mechanism, however, "a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protec-

tion of the automatic stay until the limitation period ... had expired...." *In re Morton,* 866 F.2d 561, 566 (2d Cir.1989); *see Meyer v. Cunningham,* 196 Ark. 1097, 121 S.W.2d 90 (1938) (holding a claimant's claim to be barred by the statute of limitations, as the statute of limitations was not tolled during the automatic stay imposed by the bankruptcy proceedings). As such, in 1978, Congress passed what is codified now as 11 U.S.C. § 108, which states, in pertinent part:

> [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than in bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the latter of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay....

That is, "[f]ederal law assured the plaintiffs 30 days in which to pick up the baton; if states want to give plaintiffs additional time, that is their business." *Pettibone Corp. v. Easley,* 935 F.2d 120, 121 (7th Cir.1991). It is at this point that Md.Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Art., § 5–202 becomes relevant, as the Maryland Legislature has made it its business to give plaintiffs additional time.

Section 5–202 provides: "[i]f a debtor files a petition in insolvency which is later dismissed, the time between the filing and the dismissal is not included in determining whether a claim against the debtor is barred by the statute of limitations." The issue before this Court is whether Dr. Ali's (or anyone's) federal bankruptcy petition constitutes a "petition in insolvency." Petitioner contends that the Legislature could not have intended a federal bankruptcy petition to constitute a "petition in insolvency," within the meaning of § 5–202, as no federal bankruptcy procedures were authorized in 1814—when the tolling provision was first enacted—and because the Legislature failed over the ensuing years to designate expressly those terms as synonymous, even as it continued to recodify the provision during times in which bankruptcy and insolvency

matters were moving increasingly from the state fora to the federal arena. Respondent, however, spins the same rationale differently, contending that the Legislature's repeated recodification of the tolling provision, during the time when federal bankruptcy practice burgeoned, evinces its intent for the state provision to apply to federal bankruptcy petitions. Simply put, CIT claims that § 5–202 operated to toll the statute of limitations for a period of time sufficient to make CIT's claim against Petitioner timely; if it did not, CIT's claim was untimely.[5] In order to determine which party's vision, if either, of § 5–202 prevails, we engage in one of "the principal functions which courts were created to perform": resolution of disputes concerning statutory interpretation.[6] *See Mangum v. Md. State Bd. of Censors*, 273 Md. 176, 192, 328 A.2d 283, 292 (1974).

The ultimate goal in construing and applying a statute is to "discern the actual intent of the [L]egislature in enacting it." *Chow v. State*, 393 Md. 431, 443–44, 903 A.2d 388, 395 (2006). When the Court can ascertain the Legislature's intent from the plain meaning of the verbiage, the Court need not delve deeper. *See Uninsured Employers' Fund v. Danner*, 388 Md. 649, 659, 882 A.2d 271, 277 (2005) (quoting *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998)) ("When the plain meaning is clear and unambiguous, and consistent with the broad purposes of the legislation and the

---

5. Specifically, Petitioner contends that the statute of limitations began running in May 1999 (when CIT declared Dr. Ali to be in default under the loan agreement), ran until June 2001 (when the automatic stay took effect), resumed running in September 2003 (when the automatic stay was lifted), and (by our calculations) expired in August 2004, well before CIT filed suit against Dr. Ali in January 2007. Respondent argues that, after the automatic stay went into effect, the statute of limitations did not start running again until July 2006, when the bankruptcy court dismissed Dr. Ali's bankruptcy petition.

6. Some courts perceive a distinction between "statutory interpretation" and "statutory construction." *See State ex rel. State Rd. Comm'n v. O'Brien*, 140 W.Va. 114, 82 S.E.2d 903, 911 (1954). We agree with Professor Singer that "[t]his distinction is not helpful," and we, like him, use these terms interchangeably. *See* NORMAN J. SINGER, SUTHER-LAND STATUTORY CONSTRUCTION § 45.04 (5th ed.1992).

specific purpose of the provision being interpreted, our inquiry ordinarily is at an end"). Notwithstanding the outcome of a plain-meaning analysis, however, "[i]n the interest of completeness . . . we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Kramer v. Liberty Prop. Trust,* 408 Md. 1, 19 n. 9, 968 A.2d 120, 130 n. 9 (2009) (quoting *Harris v. State,* 331 Md. 137, 146, 626 A.2d 946, 950 (1993)); *see State v. Glass,* 386 Md. 401, 411, 872 A.2d 729, 735 (2005) (quoting *Mayor of Baltimore v. Chase,* 360 Md. 121, 131, 756 A.2d 987, 993 (2000)) ("[W]hen the language of the statute is clear and unambiguous, 'the resort to legislative history is a confirmatory process. . . .' "). We conclude that a plain-meaning analysis of § 5–202 compels, and the legislative history and purpose confirms, the conclusion that a federal bankruptcy petition is a "petition in insolvency."

## A. Plain meaning of § 5–202

██ This is the Court's first opportunity to construe the phrase "petition in insolvency." This language underwent a series of cosmetic enhancements over the two centuries since the original enactment of the tolling provision. In 1814—the tolling provision's inception—the statute provided that "the time intervening between the petitioning of any of *said debtors* and the time that any of said petitions may be dismissed, shall not be computed on any plea of limitation. . . . " Chapter 122, § 3 of the Acts of 1814 (emphasis added). The use of the adjective "said" refers to Chapter 122, § 1 of the Acts of 1814, which provided, "[t]hat no petition for the benefit of the original act for the benefit of sundry *insolvent debtors*"; thus, even at its inception, the tolling provision was triggered by the filing of the functional equivalent of a "petition in insolvency." The language underwent its first change when appearing in the Maryland Code of 1860. This codification changed the word "said" to "insolvent," but did not change the substantive meaning of the tolling provision. *See* Maryland Code of 1860,

Art. 57, § 8.[7] In 1973, the Legislature recodified Art. 57 § 9 as § 5–202 of the Courts and Judicial Proceedings Article, where the tolling provision remains.[8] Regarding the numerous recodifications of the statute in question,

> [r]ecodification of statutes is presumed to be for the purpose of clarity rather than change of meaning and, thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the code.

*Allen v. State,* 402 Md. 59, 72, 935 A.2d 421, 428 (2007) (quoting *Md. Div. of Labor and Indus. v. Triangle Gen. Contractors, Inc.,* 366 Md. 407, 422, 784 A.2d 534, 543 (2001)). We conclude that the changes to the statute have been purely cosmetic.

In seeking to apply the plain-meaning rule, "it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." *Chow,* 393 Md. at 445, 903 A.2d at 396. In choosing the dictionary or dictionaries from which to glean assistance, we "consult[ ] . . . those editions (in addition to current editions) of dictionaries that were extant at the time of the pertinent legislative enactments." [9] *Harvey v. Marshall,* 389 Md. 243, 261 n. 11, 884 A.2d 1171, 1181 n. 11 (2005); *see Md. Overpak Corp. v. Mayor of Baltimore,* 395

---

7. At a later point, the Legislature moved the tolling provision from § 8 to § 9 of then Article 57.

8. In 1975, the Legislature repealed Article 47—the Article containing the balance of Maryland's insolvency laws—with the exception of Art. 47, § § 8 and 14, which it recodified as §§ 15–101 and 15–102 of the Commercial Law Article. In explaining the repeal of most of Article 47, the Revisor's Note to Chapter 49, § 3 of the Acts of 1975 explained that "[i]n revising this subtitle, the Commission to Revise the Annotated Code concluded that the provisions of present Art. 47 [except Commercial Law §§ 15–101 and 15–102] . . . are preempted by the Federal Bankruptcy Act."

9. Thus, CIT's reliance on Black's Law Dictionary's 2004 definition of "insolvency proceedings" is not persuasive.

Md. 16, 50 n. 20, 909 A.2d 235, 255 n. 20 (2006). Various 19th century legal and general dictionaries defined "insolvency" or "insolvent" in the following ways:

- Insolvency: "an inability to pay debts"—JOHNSON'S DICTIONARY OF THE ENGLISH LANGUAGE 124 (1st ed. 1804).

- Insolvency: "[i]nability to pay debts"—A GENERAL PRONOUNCING AND EXPLANATORY DICTIONARY OF THE ENGLISH LANGUAGE (9th ed. 1804); A CONCISE LAW DICTIONARY 210 (1876).

- Insolvency: "the state of a person who has not property sufficient for the full payment of his debts"—LAW LEXICON, OR DICTIONARY OF JURISPRUDENCE 384 (2d ed. 1860).

- Insolvent—Insolvency: "[a] person is said to be insolvent when he is unable to pay all his debts in full; insolvency is the condition of such a person." A DICTIONARY OF ENGLISH LAW 437 (1882).

- Insolvency: "the state or condition of a person who is insolvent"—Insolvent: "a person whose estate is not sufficient to pay his debts"; "a person ... who is under a present inability to answer, in the ordinary course of business, the responsibility which his creditors may enforce"—BOUVIER'S LAW DICTIONARY, ADAPTED TO THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA, AND OF THE SEVERAL STATES OF THE AMERICAN UNION 688 (2d ed. 1843).

- Insolvent: "a person under a present inability to liquidate his debts, which his creditors may enforce by the action of the judicial power of the country"—JOHN L. DORSEY, A TREATISE ON THE AMERICAN LAW OF INSOLVENCY; CONTAINING A COMPILATION OF THE INSOLVENT LAWS OF MARYLAND, AND THE LAWS IN RELATION TO INSOLVENT DEBTORS OF THE UNITED STATES 18 (1832).

- Insolvent: "[w]here a person's debts exceed his estate"—A NEW LAW DICTIONARY 230 (2d ed. 1850).

The early–19th century, however, is not the only time period relevant in determining the meaning of "petition in

insolvency." In 1963, Maryland adopted the Uniform Commercial Code, at which time the Legislature adopted a definition for the term "insolvent" *See* Chapter 538 of the Acts of 1963. "Insolvent" was, and is currently defined, as codified at Md.Code (1975, 2002 Repl.Vol.), Commercial Law Art., § 1–201(23), as one "who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law." Ten years later, in 1973, the tolling provision was recodified for the last time, moving from Art. 57 § 9, to § 5–202 of the Courts and Judicial Proceedings Article. Considering that, "when the [L]egislature acts, it 'is presumed to be aware of its own enactments'", *Md. State Highway Admin. v. Kim*, 353 Md. 313, 324, 726 A.2d 238, 244 (1999) (quoting *Gov't Employees Ins. Co. v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713, 717 (1993)), we conclude that had the Legislature, during its recodification process, desired an alternative definition, it would have enacted one. Its silence, however, informs us that the Legislature was content with the definition as codified in the Commercial Law Article. Furthermore, we disagree with Petitioner and can think of no substantial reason the Legislature would intend two definitions of "insolvency" or "insolvent"—one for the Courts and Judicial Proceedings Article, and another for the Commercial Law Article.[10]

Considering the foregoing, we conclude that, at the time the tolling provision was enacted, it was understood that a "petition in insolvency" was a petition filed by one in relation to his or her inability to pay off his or her debts in full. The next step in our analysis, then, is determining whether the filing of a modern-day federal bankruptcy petition falls within this definition. If so, § 5–202 operates to toll the statute of limitations; if not, Dr. Ali should prevail.

---

10. This is especially so considering that what remains of Maryland's insolvency laws following the 1975 repeal of most of the state insolvency laws, is codified in the Commercial Law Code, at §§ 15–101 and 15–102. *See infra* note 8.

It seems to us incontrovertible that the filing of a Chapter 11 federal bankruptcy petition is a petition by one in relation to his or her inability to pay off his or her debts in full. The Supreme Court has defined "bankruptcy" as the "subject of the relations between an *insolvent* or nonpaying or fraudulent debtor and his creditors. . . ." *Ry. Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 466, 102 S.Ct. 1169, 1175, 71 L.Ed.2d 335, 344 (1982) (quoting *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 513, 58 S.Ct. 1025, 1032, 82 L.Ed. 1490, 1499 (1938)) (emphasis added). Thus, at its core, bankruptcy is a "process by which certain qualifying individuals *with substantial debts* may cancel their debts and obtain a 'fresh start.'" 145 CONG. REG. 28,415 (1999) (emphasis added). Numerous modern legal dictionaries (i.e. those published after the proliferation of federal bankruptcy proceedings) have included expressly the words "insolvent" or "insolvency" when defining "bankruptcy." [11] *See, e.g.,* RAPALJE AND LAWRENCE'S LAW DICTIONARY 111 (3rd ed.2002) (Bankruptcy is the "name given to a variety of judicial or quasi-judicial proceedings, having for their main object the distribution of the property of an insolvent person. . . ."); BLACK'S LAW DICTIONARY 156 (8th ed.2004) ("A statutory procedure by which a (usu[ally] insolvent) debtor obtains financial relief. . . ."); [12] BALLENTINE'S LAW DICTIONARY 123 (3rd ed.1969) ("The law whereunder an insolvent debtor may bring all his assets . . . and have them administered. . . ."); MODERN DICTIONARY FOR THE LEGAL PROFESSION 75–76 (3d ed.1996) ("Business or personal insolvency regulated by federal law. . . ."). Simply put, people who are able to pay off their debts in full do not file for bankruptcy because they will receive no relief. *See* Emily Kadens, *The Last Bankrupt Hanged: Balancing Incentives in the Development of Bankruptcy Law,* 59 DUKE L.J. 1229, 1232 (2010) ("In modern bankruptcy . . . th[e] assistance has come to be viewed as a

---

11. While the federal bankruptcy code defines "insolvent," it does not define "bankruptcy." *See* 11 U.S.C. § 101.

12. Black's also defines a "bankrupt" as "an insolvent person." BLACK'S LAW DICTIONARY 156 (8th ed.2004).

tradeoff that the debtor makes to be freed of the burden of unpayable debts."). Therefore, modern-day bankruptcy proceedings are understood commonly as those instituted by insolvents relating to allegedly unpayable debts, thus falling squarely within § 5–202's definition of "petition in insolvency." As such, a plain-meaning analysis of the phrase "petition in insolvency" compels the conclusion that the filing of a federal bankruptcy petition operates to toll Maryland's generally-applicable three-year statute of limitations.[13]

## B. Legislative history and purpose underlying § 5–202

 Notwithstanding our plain-meaning analysis, "even when language of a statute is plain and unambiguous, courts may look to a legislative purpose to support or confirm [the] plain meaning." *Comptroller of the Treasury v. Kolzig,* 375 Md. 562, 571–72, 826 A.2d 467, 472 (2003) (citing *Taylor v. Friedman,* 344 Md. 572, 582, 689 A.2d 59, 63 (1997)). Further, "the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Lockshin v. Semsker,* 412 Md. 257, 276, 987 A.2d 18, 29 (2010). A survey of the statutory context and legislative purpose underlying § 5–202 ratifies and confirms our conclusion that the filing of a federal bankruptcy petition constitutes a "petition in insolvency."[14]

---

13. Notwithstanding this straightforward analysis, Petitioner argues that the Legislature could not have intended the filing of a federal bankruptcy petition to constitute a "petition in insolvency," considering federal bankruptcy procedures were not in place at the tolling provision's inception. We think it not important, however, the venue in which such a petition is filed (federal or state courts), but rather, whether the petition sufficiently constitutes a "petition in insolvency."

14. We shall not reproduce in full the intermediate appellate court's impressive efforts detailing the history of state insolvency laws. *See Ali v. CIT Tech. Fin. Servs.,* 188 Md.App. 269, 277–81, 981 A.2d 759, 764–66 (2009). If imitation is the sincerest form of flattery, the panel of the intermediate court that decided this case will have to be satisfied with our lip service flattery. The historical context traced by the intermediate appellate court may be germane to a future case, and so we urge

At one time, the terms "bankruptcy" and "insolvency" referred to two entirely different systems of debt liquidation. *See Ali v. CIT Tech. Fin. Servs.*, 188 Md.App. 269, 277, 981 A.2d 759, 764 (2009) (citing CHARLES WARREN, BANKRUPTCY IN UNITED STATES HISTORY 7 (1935)). At the time our relevant tolling provision was enacted, however, "there was no clear line of demarcation between bankruptcy and insolvency as there had been in England." *Ali*, 188 Md.App. at 278, 981 A.2d at 764; *see Cont'l Ill. Nat'l Bank & Trust Co. v. Chicago, Rock Island & Pac. Ry. Co.*, 294 U.S. 648, 667–68, 55 S.Ct. 595, 602, 79 L.Ed. 1110, 1123–24 (1935) ("While attempts have been made to formulate a distinction between bankruptcy and insolvency, it has long been settled that ... the terms are convertible."); *Sturges v. Crowninshield*, 17 U.S. 122, 194, 195, 4 Wheat. 122 4 L.Ed. 529, 548 (1819) ("[T]he subject is divisible in its nature into bankrupt and insolvent laws; though the line of partition between them is not so distinctively marked as to enable any person to say, with positive precision, what belongs exclusively to one, and not to the other class of laws.... Although the two systems have existed apart from each other, there is such a connection between them...."); *Ex Parte Hull*, 12 F. Cas. 853, 856 (S.D.N.Y. 1842) ("[T]here is no sound distinction between bankruptcy and insolvency."); WARREN, *supra*, at 7 ("Nowhere in the States, other than Pennsylvania, however, does there seem to have been a clear line of demarcation which existed in England between a bankruptcy system and an insolvency system...."). Therefore, the Legislature presumably intended for § 5–202 to apply to what was once segmented into "bankruptcy" and "insolvency" proceedings, and to what is now predominantly under the purview of federal bankruptcy law. *See* FRANCIS HILLARD, A TREATISE ON THE LAW OF BANKRUPTCY AND INSOLVENCY 14 (2d ed.2003) ("These State [insolvency] laws were apparently coextensive, in all their purposes and effects, with a general bankruptcy law."). Of course, if federal

---

interested persons to refer to the Court of Special Appeals's opinion in this case for that historical perspective.

bankruptcy law does not cover currently what was swept up formerly in Maryland's insolvency laws, there would have been no reason to repeal most of our state insolvency laws on the grounds of preemption. *See* Revisor's Note to Chapter 49, § 3 of the Acts of 1975; *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507, 511 (1918) ("[S]tate laws are suspended ... to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress....."). Thus, it is clear that, in 1814, at § 5–202's predecessor's inception, the Maryland Legislature intended the tolling provision to apply to what is now covered by federal bankruptcy proceedings. *See Kindley v. Governor of Md.,* 289 Md. 620, 625, 426 A.2d 908, 911 (1981) (noting that "laws are addressed to the future," and, as such, "[w]here ... a statute is phrased in broad general terms, it suggests that the Legislature intended that the provision to be capable of encompassing circumstances and situations which did not exist at the time of the enactment.").

Also buttressing the conclusion that a federal bankruptcy petition is a "petition in insolvency" within the meaning of § 5–202 is the fact that Petitioner's reading of the tolling provision—if we were to favor it—would undermine the legislative purpose in enacting (and recodifying) the provision. We agree with the intermediate appellate court that, like 11 U.S.C. § 108, Courts and Judicial Proceedings § 5–202 was enacted "to address the public's complaint that debtors manipulated the bankruptcy and insolvency processes to avoid paying creditors by entering bankruptcy, waiting for the statute of limitations to expire, and subsequently dismissing the bankruptcy proceeding." *Ali,* 188 Md.App. at 283–84, 981 A.2d at 767; *see* JOHN L. DORSEY, A TREATISE ON THE AMERICAN LAW OF INSOLVENCY; CONTAINING A COMPILATION OF THE INSOLVENT LAWS OF MARYLAND, AND THE LAWS IN RELATION TO INSOLVENT DEBTORS OF THE UNITED STATES 15 ("An objection has been made to the adoption of a bankrupt system, that it may be abused and perverted to the means of fraud upon the creditor."). Because the Legislature has repealed most of Maryland's insolvency laws, if § 5–202 is read to only apply to state insolvency laws (or their scant remains), the tolling provision—reenacted

and/or recodified in 1814, 1860, and 1973—and its accompanying policies preventing debtor abuse, would be rendered largely meaningless. Accordingly, we refuse to give § 5–202 such a reading. *See Blake v. State*, 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006) ("We avoid a construction of [a] statute that is unreasonable, illogical, or inconsistent with common sense.").

Petitioner gasps for one last breath of air from *City of Saco v. Pulsifer*, 749 A.2d 153 (Me.2000). In *Pulsifer*, the City of Saco assessed nearly $20,000 in property taxes on Pulsifer's property over a two-year period. *Pulsifer*, 749 A.2d at 154. Thereafter, Pulsifer filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maine, at which time 11 U.S.C. § 362(a)'s automatic stay took effect. *Id.* Because the City did not protect its interest by filing a proof of claim with the bankruptcy court, it did not receive a distribution pursuant to the order discharging Pulsifer's pre-bankruptcy debts. *Id.* Thereafter, the City filed a complaint in Superior Court seeking payment of the property taxes, which the court dismissed. *Id.* The Superior Court held that the suit was barred by the statute of limitations, explaining that 14 ME.REV.STAT. ANN. § 866 (2009) [15]—argued here by Petitioner to be § 5–202's Maine analog, and which tolls the statute of limitations during "the time of the pendency of his insolvency proceedings"—did not apply to toll the statute of limitations. *Id.* The Maine Supreme Judicial Court affirmed the trial court's dismissal ultimately, explaining that there exists no "authority for importing modern language and modern concepts into this century-old piece of legislation." *Pulsifer*, 749 A.2d at 155.

To the extent that *Pulsifer* is on point, of course, we are not bound by its holding or its rationale, and would reject its reasoning, if it came to that. *See Bozman v. Bozman*, 376

---

**15.** Maine's tolling provision provides, in pertinent part, that "if a person is adjudged an insolvent debtor after a cause of action has accrued against him, and such cause of action is one provable in insolvency, the time of the pendency of his insolvency proceedings shall not be taken as a part of the time limited for the commencement of the action." 14 ME REV.STAT. ANN. § 866 (2009).

Md. 461, 490, 830 A.2d 450, 467 (2003) ("[D]ecisions of our sister jurisdictions are not binding on this Court and ought not dictate the course of jurisprudence in the State of Maryland."). There are, however, a few poignant differences between the Maine statute and the one in the present case. For one, the court in *Pulsifer* noted that its tolling provision only applies when: "(1) a creditor with a claim against the debtor has 'proven' that his debts are recoverable, and (2) the debtor has been 'adjudged an insolvent debtor.'" *Pulsifer*, 749 A.2d at 155. Noting that there were no such requirements under the current federal system, the court in *Pulsifer* adjudged Maine's tolling provision was inconsistent with federal bankruptcy law. *See id.* In Maryland, however, neither proving recoverable debts nor being adjudged insolvent are prerequisites to the application of § 5–202, and, in this sense, our tolling provision is entirely consistent with federal bankruptcy law. Furthermore, the court in *Pulsifer* noted that it was left with no guidance as to the tolling period; that is, it was "left to speculate at whether the statute should be tolled during the entire proceeding, or just during the automatic stay, while creditors' rights to sue are actually hindered." *Pulsifer*, 749 A.2d at 156. The Maryland statute, however, is entirely clear; the tolling period commences upon the filing of the petition, and it is terminated at the dismissal of that petition.[16] *See* Md.Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Art., § 5–202. That is, "[u]nlike the Maine statute, we can apply our statute without rewriting it." *Ali*, 188 Md.App. at 289, 981 A.2d at 771. Thus, Petitioner's reliance on *Pulsifer* is misplaced.

For the reasons stated, we conclude that the plain-meaning, legislative history, and the legislative purpose of § 5–202 of

---

16. Thus, we disagree with Petitioner's contention that the statute of limitations began to run again on 3 September 2003, the date on which the automatic stay was lifted. While it is true that, at that point, CIT could have filed suit against Dr. Ali, § 5–202 is clear that the limitations period is tolled until the dismissal of the bankruptcy petition. Therefore, the limitations period resumed running on 12 July 2006—the date the bankruptcy court dismissed Dr. Ali's bankruptcy petition.

the Courts and Judicial Proceedings Article mandate the conclusion that a federal bankruptcy petition constitutes a "petition in insolvency." Therefore, § 5–202 operated to toll any applicable statute of limitations from the time the debtor (Dr. Ali) filed his federal bankruptcy petition until the time that petition was dismissed. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**