*Lowery v. Hoang, et al.*, No. 2085, September Term, 2016
Filed: February 27, 2019, Opinion by Friedman, J.

HEADNOTES:
**CJ § 5-202 > BANKRUPTCY > DENIAL OF DISCHARGE**
When a debtor enters bankruptcy, CJ § 5-202 tolls a creditor's claim if the debtor either is denied a discharge pursuant to 11 U.S.C. § 727, or if the bankruptcy is dismissed.

REPORTED

IN THE COURT OF SPECIAL APPEALS

 OF MARYLAND

No. 2085

September Term, 2016

_____

JEFFREY LOWERY

v.

MINH-VU HOANG, ET AL.

_____

Meredith,
Friedman,
Wilner, Alan M.
(Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Friedman, J.
_____

Filed: February 27, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The United States Constitution provides that:

> The Congress shall have [p]ower [t]o … establish … uniform [l]aws on the subject of [b]ankruptcies throughout the United States.

U.S. Const., art. I § 8, cl. 4. Despite this seemingly clear grant of power, it took Congress a long while to establish federal bankruptcy law, and longer still for it to establish a permanent bankruptcy law that preempted existing state insolvency laws. Thus, there were long stretches during the 19th century in which Maryland had its own insolvency law that operated alongside, or even instead of, federal bankruptcy law. State insolvency laws were finally preempted in 1898[1] but Maryland's version remained dormant, on the books, until 1975 when it was deleted.[2] One provision of the old state insolvency law, however, survived: a provision that tolls causes of action against a debtor during insolvency proceedings:

> If a debtor files a petition in insolvency which is later *dismissed*, the time between the filing and the *dismissal* is not included in determining whether a claim against the debtor is barred by the statute of limitations.

Md. Code, Cts. & Jud. Proc. ("CJ") § 5-202 (emphasis added).[3] Despite the fact that CJ § 5-202 was designed for application to the old state insolvency procedure (and still uses

---

[1] Nelson Act (Bankruptcy Act of 1898), ch. 541, 30 Stat. 544, (codified as amended in scattered sections of 11 U.S.C.).

[2] Ch. 49, § 3 of the Acts of 1975.

[3] This version of CJ § 5-202 was adopted during code revision in 1973. 1973 Acts, 1st Spec. Sess. Ch. 2. When first adopted in 1815, the provision read:

> [T]he time intervening between the petitioning of any said debtors and the time that any of said petitions [for the benefit

its terminology), the Court of Appeals has instructed us to apply it to current federal bankruptcy cases. *Ali v. CIT Tech. Fin. Servs.*, 416 Md. 249 (2010). Thus, in *Ali*, the Court of Appeals held that a "petition in insolvency," as that term is used in CJ § 5-202, must be read to include a modern bankruptcy petition, and held that state claims are preserved by operation of CJ § 5-202 while a debtor is engaged in the federal bankruptcy process.[4] *Id.* at 270-71.

This case follows *Ali*, but requires us to determine the meaning of the words "dismissed" and "dismissal" as they appear in CJ § 5-202. Lowery proposes a broad interpretation, which would include *any* termination of a bankruptcy proceeding, not just dismissals. And because every bankruptcy must end, he argues, this statute tolls every creditor claim when a debtor enters bankruptcy, until the bankruptcy ends. Hoang, by contrast, advocates for a narrower reading that would limit "dismissed" and "dismissal" in CJ § 5-202 to only cases that are "dismissed" in modern federal bankruptcy practice,

---

of the insolvency law] may be dismissed, shall not be computed on any plea of limitation so as to defeat any claim of any person against such debtor.

1815 Acts, Ch. 122 § 3. See note 8 and the Appendix for a further discussion of this legislation. There were other intermediate formulations. Md. Code Pub. Gen. Laws, Art. 57, § 9 (1904); Md. Code Pub. Gen. Laws, Art 47, § 8 (1880).

[4] When a debtor files for bankruptcy, an automatic stay is immediately enacted which prohibits creditors from filing any claims against a debtor. 11 U.S.C. § 362. Federal bankruptcy law preserves creditors' claims against a debtor's estate for the duration of the automatic stay plus 30 days after it is lifted. 11 U.S.C. § 108(c)(2). Federal law also permits the states to adopt longer periods. 11 U.S.C. § 108(c)(1). Thus, in *Ali*, the Court of Appeals held that CJ § 5-202 serves as Maryland's adoption of a longer period. 416 Md. at 259 ("[T]he Maryland Legislature has made it its business to give plaintiffs additional time.").

2

meaning dismissed under 11 U.S.C. § 707(a) (providing for dismissal of a Chapter 7 bankruptcy), § 1112(b)(1) (providing for dismissal of a Chapter 11 bankruptcy), or § 1307(b) (providing for dismissal of a Chapter 13 bankruptcy). We will select an intermediate course.

## FACTS

There are three specific facts necessary to understand this case: (1) Hoang incurred a debt to Lowery in 2002; (2) Hoang filed for bankruptcy in 2005 and was denied a discharge; and (3) Hoang received $87,000 in 2016 out of which Lowery seeks to be paid for the 2002 debt. We explain the details of each below.

A.      The 2002 Debt

On April 11, 2002, the Circuit Court for Montgomery County entered a default judgment in favor of Lowery against Hoang for $16,987. Lowery has yet to collect on that judgment. With interest, Lowery's judgment totaled over $41,000 by July of 2016. A money judgment in Maryland expires after 12 years, unless it is renewed before it expires. CJ § 5-102(a)(3) (establishing the limitations period).[5] All parties agree that Lowery did not renew that judgment within the 12-year period. Thus, the 2002 debt has been extinguished if it was not somehow extended.

---

[5] While CJ § 5-102(a)(3) establishes the 12-year statute of limitation, "Md. Rule 2-625 implements the limitations period found in CJ § 5-102" by explaining when a judgment expires and can be renewed. *State, Comptroller of Maryland v. Shipe*, 221 Md. App. 425, 435 (2015) (cleaned up).

B.    Hoang's Bankruptcy

Hoang petitioned for Chapter 11 bankruptcy protection on May 10, 2005 and the bankruptcy court issued an automatic stay. *See* 11 U.S.C. § 362(a) (authorizing an automatic stay). A bankruptcy trustee was appointed to administer Hoang's bankruptcy estate. For reasons that don't concern us, Hoang's bankruptcy was converted into a Chapter 7 bankruptcy on October 28, 2005. Hoang behaved badly and hid assets from the trustee.[6] As a result, on March 22, 2006, the Bankruptcy Court issued an Order denying Hoang a discharge and lifting the automatic stay. *See* 11 U.S.C. § 727 (authorizing denial of discharge); *In re Packer*, 520 B.R. 520, 533 ("The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor.") (Cleaned up). Thus, Hoang's bankruptcy case remains open: the bankruptcy trustee has not yet finished marshalling her assets and distributing the proceeds to her creditors. We are informed that this process may still take years.

---

[6] Hoang's bad behavior in bankruptcy is well-documented. As the federal court described, after Hoang filed for bankruptcy:

> the Trustee commenced numerous adversary proceedings to recover property of the estate that [Hoang] had attempted to conceal through various business entities with which she was associated. She failed to report these entities on her bankruptcy schedules and her statement of financial affairs, and she was criminally indicted on charges related to bankruptcy and tax fraud. On October 13, 2010, [she] pled guilty to conspiracy to defraud an agency of the United States . . . [and] was sentenced to a term of imprisonment of sixty months.

*In re Minh Vu Hoang*, 2015 U.S. Dist. WL 2345588, at *1 (D. Md. May 15, 2015).

4

C.    The 2016 Recovery

In April of 2016, Hoang recovered $87,000 in the settlement of an unrelated real estate dispute. Pursuant to a deal struck with her bankruptcy trustee, half of the settlement, $43,500, went to the trustee for the benefit of her creditors and half went to Hoang's lawyer. Lowery learned of the settlement, however, and served a writ of garnishment in the amount of $41,294.31 (the amount of the original 2002 judgment plus interest).

D.    Subsequent Procedural History

Hoang moved to quash the writ of garnishment arguing that, as described above, Lowery's judgment was more than 12 years old and had expired pursuant to the 12-year statute of limitations in CJ § 5-102(a)(3). Lowery responded that his time for collecting the judgment had been extended by operation of CJ § 5-202. The circuit court agreed with Hoang, finding that CJ § 5-202 did not toll the limitations period on Lowery's judgment. Lowery appealed.

**ANALYSIS**

The question that we must consider then is what the legislature intended when it adopted (and repeatedly readopted) the precursor to what is now CJ § 5-202. If it meant the words "dismissed" and "dismissal" to mean what they mean in modern bankruptcy law, then Hoang's bankruptcy has not been dismissed and may never be dismissed. If so, Lowery must watch and wait. If Hoang's bankruptcy is ever dismissed, then he may resurrect his claim. Alternatively, if the legislature intended the words "dismissed" and "dismissal" to have a broader meaning, then perhaps "dismissal" also includes other resolutions of bankruptcy proceedings.

5

Our use of the traditional methods of statutory interpretation is inconclusive. Although the Court in *Ali* discussed the meaning of dismissal as used in CJ § 5-202, it did not settle on a conclusive meaning and did not reach a result that decides this case.[7] We have reviewed the remaining legislative history[8] (of which there is little), as well as contemporaneous general dictionaries,[9] contemporaneous legal dictionaries,[10] and

---

[7] When Ali argued that dismissal should be defined as the time at which the automatic stay is lifted, the Court disagreed because "[CJ] § 5-202 is clear that the limitation period is tolled until the dismissal of the bankruptcy petition." *Ali*, 416 Md. at 270 n.16. From this we know only that the lifting of the automatic stay is not a "dismissal" for purposes of CJ § 5-202. This does not tell us what *is* a dismissal.

[8] The original bill, by which the predecessor to CJ § 5-202 was adopted, contained three separate sections, each of which pertained to insolvency. Ch. 122 of the Acts of 1815 (full text in Appendix). Section 3 was the predecessor to CJ § 5-202 and used the word "dismissal." *See supra* note 3. Section 2 described the procedure that creditors should take when reviving a judgment against the debtor, but used three terms: "dismissal," "withdrawing of any petition," and "decisions thereon against the petitioner." Thus, if the drafters of the bill were using the word "dismissal" in § 3 in a manner that is consistent with how they used it in § 2, we might infer that "dismissal" does not include a withdrawal or an adverse decision. While interesting, this insight doesn't get us any closer to understanding what the drafters intended the scope of dismissal to be.

[9] We looked at, for example, JOHN ASH, NEW AND COMPLETE DICTIONARY OF THE ENGLISH LANGUAGE (1795) (defining "dismiss" as "[t]o send away, to give leave to depart, to discard, to divest from office"); NOAH WEBSTER, A COMPENDIOUS DICTIONARY OF THE ENGLISH LANGUAGE (1806) (defining "dismiss" as "to send or put away, discard or dispose"). These definitions in contemporaneous general dictionaries are, unfortunately, not very helpful in understanding what the legislature intended "dismissal" to include. Because the definitions do not specify why a case would be disposed of, they could be read broadly enough to encompass every reason a case ends (whether by dismissal or closure) or narrowly enough to include only cases that end due to dismissal.

[10] We looked at, for example, JOHN BOUVIER, A LAW DICTIONARY ADAPTED TO THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA (1839) (defining "to dismiss a cause" as "removing a cause out of court without a formal hearing"); BLACK'S LAW DICTIONARY (1st ed. 1891) (defining "dismissal" as "[t]o send away; to discharge; to cause to be removed"). These contemporaneous legal definitions are not helpful in

6

contemporaneous legal practice manuals[11]—only to have emerged as uncertain as when we began. Fortunately, however, we think a functional method of statutory interpretation provides a historically accurate and correct interpretation.

As we understand it, under traditional Maryland insolvency practice, the debtor's nonexempt assets would be gathered and turned over to a trustee and eventually, the creditors. 1805 Acts, ch. 110, §§ 3-5. In exchange, the debtor would receive a discharge of debts and a fresh start. 1805 Acts, ch. 110, § 13. Of course, not all insolvencies reached this successful conclusion. *See e.g.* 1805 Acts, ch. 110, § 9 (precluding debtors who are convicted of deceiving their creditors from benefiting from the insolvency laws). The predecessor to CJ § 5-202 was adopted to ensure that creditors, whose debtors failed in obtaining a discharge, wouldn't be worse off for cooperating in the process. Thus, if an

---

understanding what the legislature intended "dismissal" to include. Although they tell us that a case is removed from the docket, the definitions don't tell us *why* a case may be removed, allowing the possibility that the legislature meant dismissal to be defined broadly, like Lowery advocates, to include termination for any reason, or narrowly, like Hoang prefers, to limit dismissal to the modern bankruptcy definition.

[11] We have found two contemporaneous (or reasonably contemporaneous) legal practice manuals that explain Maryland insolvency law. Unfortunately, neither helps us resolve this case. Poe's Practice and Procedure, a Maryland civil procedure manual that includes insolvency practice, discusses the "term "dismissal" only in the context of *involuntary* insolvency petitions. POE'S PRACTICE AND PROCEDURE § 800 (1st ed. 1880). That doesn't help us because CJ § 5-202, by its terms, applies only to *voluntary* insolvencies and, in fact, Maryland didn't adopt an involuntary insolvency procedure until 65 years later, in 1880. John Dorsey's treatise on insolvency law described insolvency law in many states, but sometimes focused on Maryland's insolvency law. JOHN L. DORSEY, A TREATISE ON THE AMERICAN LAW OF INSOLVENCY 82 (1832). Dorsey's treatise described instances when a creditor could move for "dismissal" if there was a defect in the petition such as insufficiency of notice. *Id*. at 82. Regrettably, although Dorsey tells us when "dismissal" was inappropriate, he neglects to tell us when it was appropriate. *Id*.

7

insolvency was successful, the creditors got the debtor's available assets. 1805 Acts, ch. 110, § 7. If the insolvency was unsuccessful, the creditors' claims were preserved and everyone was restored to their prepetition status. Operationally, this was accomplished by CJ § 5-202 extending the statute of limitations for the period during which the debtor was pursuing insolvency up until the court determined that it was unsuccessful.

In modern bankruptcy, the vast majority of proceedings end in one of the same two ways that insolvency proceedings ended 200 years ago. A successful bankruptcy today results in a closure, by which the debtor's estate is fully administered for the benefit of the creditors. 11 U.S.C. § 350(a) ("After an estate is fully administered and the court has discharged the trustee, the court shall close the case."). The creditors recover what they can and the debtor receives a discharge and a fresh start. Alternatively, bankruptcy cases can end unsuccessfully, in a dismissal. 11 U.S.C. § 707(a) (providing for dismissal of a Chapter 7 bankruptcy), § 1112(b)(1) (providing for dismissal of a Chapter 11 bankruptcy), or § 1307(b) (providing for dismissal of a Chapter 13 bankruptcy). A bankruptcy can be dismissed for a host of reasons, including failure to pay certain fees and material default of the confirmed repayment plan. 11 U.S.C. § 1307(c) (listing what constitutes "cause" for dismissing or converting a case). If the bankruptcy case is dismissed, the debtor does not receive a discharge, but instead the automatic stay is dissolved and dismissal "restores the assets and parties to their prepetition status, as if the case had never been filed." *In re Woodhaven, Ltd.*, 139 B.R. 745, 748 (N.D. Ala. 1992).

Modern bankruptcy law, however, also permits a third possible outcome:[12] a denial of discharge. This is a rare occurrence,[13] reserved for the most misbehaving debtors. *In re Packer*, 520 B.R. at 533. The effect of a denial of discharge is really the worst of both worlds for the debtor: the debtor remains in bankruptcy and his or her assets continue to be administered for the benefit of the creditors. BANKRUPTCY CODE MANUAL, § 727:8 ("If a debtor is denied a discharge under § 727(a), the debtor remains liable for *all* unpaid obligations. Moreover, the assets that the nondischarged debtor may acquire in the future are also subject to the claims of creditors."). But a debtor who is denied a discharge will never obtain a discharge in their case or a fresh start. *In re Oliver*, 819 F.2d 550, 552 (1987) (explaining that a violation of 11 U.S.C. § 727 "entirely bars discharge"). As we said before, however, the denial of discharge did not exist in Maryland insolvency law.

Lowery's solution is that every outcome in bankruptcy—successful or unsuccessful—ought to receive the benefit of the tolling provided by CJ § 5-202. This theory is obviously wrong. The state legislature in 1815 only extended the benefit of tolling to creditors when the debtor's insolvency was unsuccessful. We won't extend the benefit to a situation that the legislature clearly intended to exclude: a successful bankruptcy. Hoang's solution is that dismissal in 1815 meant exactly the same as what dismissal means

---

[12] There is a fourth option, conversion, in which a bankruptcy filed pursuant to one chapter of the bankruptcy code is converted to proceed under a different chapter. 11 U.S.C. §§ 707(b); 1112(a). That outcome is not relevant for our present purposes.

[13] For example, in fiscal year 2016, there were 482,693 Chapter 7 Bankruptcy filings and only 1,004 denials of discharge, a rate of around 0.2%. UNITED STATES TRUSTEE PROGRAM, ANNUAL REPORT OF SIGNIFICANT ACCOMPLISHMENTS 4-5 (2016), https://perma.cc/R57X-9DRX.

today. She argues that because her bankruptcy hasn't been dismissed, her creditors are not entitled to the benefit of tolling. This seems wrong too. The legislature wouldn't have intended for the worst debtors to be treated better than merely unsuccessful debtors, like those whose cases are dismissed for failing to pay the correct fees or failing to file correct information with the court within 15 days. 11 U.S.C. § 707(a).

We think that the solution is obvious. The legislature, in enacting CJ § 5-202, intended to hold creditors unharmed by preserving their otherwise time-barred claims while participating in an unsuccessful bankruptcy. That benefit was not necessary and therefore was not provided for creditors participating in a successful bankruptcy. We hold that that was the distinction that the legislature intended in 1815 and that we will enforce today by holding that creditors of debtors whose bankruptcies are dismissed, as defined by 11 U.S.C. § 707(a), § 1112(b)(1), § 1307(b), or denied a discharge, pursuant to 11 U.S.C. § 727, are entitled to the tolling offered by CJ § 5-202.[14] This outcome, while not compelled by *Ali*, is certainly consistent with the Court of Appeals' statement that CJ § 5-202 was "enacted to address the public's complaint that debtors manipulated the bankruptcy and insolvency process by entering bankruptcy, waiting for the statute of limitations to expire, and subsequently dismissing the bankruptcy proceeding." *Ali*, 416 Md. at 268. As a result, we reverse the judgment of the circuit court and reinstate Lowery's claim.[15]

---

[14] Of course, if this is not what the current legislature thinks the 1815 legislature intended, or if they have a new idea about how to deal with state claims while a debtor is in bankruptcy, they are free to rewrite CJ § 5-202. We encourage it.

[15] Because of our resolution of this issue, we need not reach Lowery's claim that Hoang is collaterally estopped from litigating this position. We note however, two

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; COSTS TO BE PAID BY APPELLEE.**

---

problems with Lowery's theory of collateral estoppel. *First*, the issue of whether CJ § 5-202 tolls claims during bankruptcy before a case is formally dismissed seems, to us, to be a legal issue and not a factual issue. And collateral estoppel is most commonly, if not exclusively, applied to the resolution of factual issues. *See Shader v. Hampton Improvement Association, Inc.*, 217 Md. App. 581, 605 (2014) (stating, without elaborating upon what separates factual issues from legal, that "collateral estoppel precludes a party from re-litigating a *factual* issue") (emphasis added). *Second*, although it is apparently an unresolved issue in Maryland law and throughout the United States, it appears that the most common view is that a default judgment should not be considered to have been "finally litigated" for purposes of collateral estoppel. *John Crane, Inc. v. Puller*, 169 Md. App. 1, 36 (2006) (stating, in *obiter dicta,* that a "default judgment does not have preclusive effect where issues of fact were not actually litigated") (cleaned up); RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. E (1982) ("[I]n the case of a judgment entered by . . . default, none of the issues is actually litigated."); BANKRUPTCY EVIDENCE MANUAL, § 3:14 ("[T]he collateral estoppel effect of a prior default judgment under state law varies from state to state."); *Collateral Estoppel in Default Judgments: The Case for Abolition*, 70 COLUM. L. REV. 522 (1970) (arguing against the application of non-mutual collateral estoppel to a default judgment because choosing to default usually does not contemplate future inability to litigate the issue against a different plaintiff).

11

## CHAPTER 122.
*An additional supplement to the act entitled, an act for the relief of sundry insolvent debtors.*

Sec. 1. BE IT ENACTED *by the General Assembly of Maryland,* That no petition for the benefit of the original act for the benefit of sundry insolvent debtors, and the several supplements thereto, now depending in any of the county courts of this state shall be continued beyond the second session of such court next after the passage of this act; unless in cases where the court shall be satisfied a further continuance is necessary to procure testimony material and competent on the trial of any allegations made against the petitioner's discharge, nor shall, any such petition hereafter to be filed, be continued beyond the first court next after the filing thereof unless for the causes aforesaid.

2. AND BE IT ENACTED, That upon the dismissal or withdrawing of any petition for the benefit of said acts, or upon decisions thereon against the petitioner, it shall not be necessary to revive by *scire facias* any judgment which may have been suspended by such petition, and process of execution may be issued upon such judgments as if no such suspension had taken place.

3. AND BE IT ENACTED, That the time intervening between the petitioning of any of said debtors and the time that any of said petitions may be dismissed, shall not be computed on any plea of limitation so as to defeat any claim of any person against such debtor.